Sondheimer v. Graeser.

72    41
172s 293

## Emanuel Sondheimer et al. v. Joseph Graeser et al.

1. Appeals and Errors—*An Assignment of Errors Must be Good as to All who Join in it.*—An assignment of errors, like a pleading, must set forth errors which are available to all who join in it. If not good as to all, it is not good as to any.

2. Chattel Mortgages—*Who May not Set up Laches in Foreclosing.*—One who signs a replevin bond in a suit in which mortgaged goods are replevied from the mortgagee after he has taken possession under his mortgage, assists in preventing the foreclosure of the mortgage, and is estopped to say that the mortgagee has been guilty of *laches* in failing to foreclose.

3. Same—*Corporation Organized by Mortgagors, not a Purchaser.*—The owners of mortgaged property do not become purchasers with a right to defend against the mortgage because it was not foreclosed at maturity by merely organizing themselves as a corporation and going through the forms of transferring the property to the corporation.

4. Same—*Persons Controlling Corporation Making Mortgage, not Purchasers.*—Persons who constitute a majority of the board of directors of a corporation and control its business, and who are for all practical purposes the corporation, stand in no different relation to a mortgagee of the company's property than does the company, and can not defend against a mortgage because it was not foreclosed at maturity.

Bill, for the dissolution of a corporation and for a receiver. Appeal from the Circuit Court of Cook County; the Hon. John Gibbons, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed October 11, 1897.

BLUM & BLUM, attorneys for appellants.

BULKLEY, GRAY & MORE, attorneys for appellees.

PER CURIAM.

The William D. Gibson Company filed a bill in equity in the Circuit Court, making the Gassman Parlor Frame Company, Catherine Gassman, William Gassman, Fred C. Mueller, George Lesprance, Henry Sondheimer and Max Sondheimer defendants, alleging, among other things, that the Gassman Parlor Frame Co. was indebted to the complainant in the sum of $103.66; that it was largely indebted to laborers and others; and that, in September, 1895, when it was insolvent, it fraudulently executed a judgment note for a large amount, and assigned its book accounts to E. Sondheimer & Co., etc.

The prayer of the bill was for a dissolution of the corporation, and for a receiver, etc. The other parties to this appeal, who were not originally made defendants to the bill, were subsequently made parties, and presented their claims by appropriate pleadings. The record discloses the following facts: Prior to the organization of the Gassman Parlor Frame Co. as a corporation, the Gassmans were manufacturing frames under the firm name of Gassman, Trumper & Co. June 22, 1894, Catherine Gassman, who seems to have been the owner of the property, executed to the order of Rees Brothers four promissory notes, one for the principal sum of $2,055, due on or before July 1, 1895, and three for the sum of $200 each, and due, respectively, on the first days of July, August and September, 1894, and to secure the payment of said notes executed a chattel mortgage of the machinery, fixtures, etc., in the manufacturing plant of the Gassmans. Rees Brothers assigned the notes and mortgages to James W. Garvy, and Joseph Graeser, one of the appellees, subsequently became the owner of the notes and mortgage by assignment from William J. Garvy, administrator of the estate of James W. Garvy. After the execution of the notes and mortgage, the Gassman Parlor

Frame Co. was organized, and the plant of the Gassmans, including the mortgaged property, was transferred to the new corporation. The board of directors of the Gassman Parlor Frame Co. was composed of its officers, viz.: William Gassman, president; Max Sondheimer, treasurer, and Henry Sondheimer, secretary. Max Sondheimer, the treasurer, and Henry Sondheimer, the secretary, were sons of Emanuel Sondheimer, and Max was also a member of the firm of E. Sondheimer & Co., the other members of that firm being Emanuel Sondheimer and Moses Katz. The stock of the Gassman Parlor Frame Co. was divided into fifty shares of the par value of $100 each, of which Henry Sondheimer held twenty-four and Max Sondheimer one share. That these twenty-five shares were, in fact, the property of E. Sondheimer & Co. is evident from the testimony of Max Sondheimer. He says the firm of E. Sondheimer & Co. furnished the Gassman Parlor Frame Co. lumber and all the money the company needed to do business; that they, E. Sondheimer & Co., backed the Parlor Frame Co., and, in consideration of that, the twenty-five shares of stock were given them. He also says that he went into the directory because the firm of E. Sondheimer & Co. had sold the Parlor Frame Co. all the lumber it used, paid its notes, and carried on its business, and that the Parlor Frame Co. was insolvent when he and Henry went into the directory. Henry Sondheimer testified that he had knowledge of most of the affairs of the Parlor Frame Co., as to its financial condition and standing, and that the business of that company was conducted with the money of E. Sondheimer & Co. September 16, 1895, the Gassman Parlor Frame Co., being then insolvent and indebted to E. Sondheimer & Co. to the amount of about $3,386.45, William Gassman, the president of the company, being thereunto authorized by the company's board of directors, executed a judgment note to E. Sondheimer & Co. for the sum of $3,128.88. Max Sondheimer explains the discrepancy between the amount due and the amount evidenced by the note, by saying that there were some items which, at the date of the note, had not been charged up in

the ledger of E. Sondheimer & Co. Also, September 16, 1895, the secretary of the Gassman Parlor Frame Co., acting in pursuance of a resolution of the board of directors of said date, assigned to E. Sondheimer & Co. all the outstanding accounts and debts due to the Gassman Company, as further security for its indebtedness to E. Sondheimer & Co. The resolutions of the board of directors authorizing the execution of the judgment note and the assignment of the accounts, were passed by the votes of William Gassman, president, and Henry Sondheimer, secretary, Max Sondheimer being present but not voting. Max at first voted in favor of assigning the accounts; but subsequently withdrew his vote. September 17, 1895, E. Sondheimer & Co. caused judgment to be entered in the Superior Court of Cook County on the judgment note above mentioned, sued out an execution on the judgment, and caused the same to be levied upon the property of the Gassman Parlor Frame Co., including the property described in the chattel mortgage assigned to Joseph Graeser, which property so levied on the sheriff took possession of, and appointed Henry Sondheimer as custodian thereof. While these proceedings were in progress a bill was pending in the Superior Court filed by William Garvy, administrator of the estate of James W. Garvy, deceased, for the foreclosure of the chattel mortgage in question, in which E. Sondheimer & Co. intervened, and, subsequently to the taking possession of the property levied on by the sheriff, Emanuel Sondheimer was appointed receiver in that suit, and, by order of the court, the sheriff turned over the property to him. September 27, 1895, the suit was dismissed, and the receiver in that suit then turned over the property to the receiver appointed by the Circuit Court in the present case. All of the property was sold by order of the court, and the proceeds of the sale, together with a small sum of money in the hands of the receiver, amounted to the sum of $2,231.91. The court found that certain claims of laborers, amounting to the sum of $666.78, were a first lien on the fund; that the chattel mortgage of appellee Graeser was a second lien, to the amount of $2,400; and decreed that, after paying said

amounts, the receiver should pay from any funds in his hands the claim of E. Sondheimer & Co. The appellants assign as error the finding of the Circuit Court that the chattel mortgage owned by appellee Graeser was a valid lien, and giving it priority to the claim of appellant. Counsel for appellants says : " The question, and the only one which now arises in the cause, relates to the validity of the chattel mortgage."

It is not contended that there was not a good and valid consideration for the mortgage, or that it was not properly executed, acknowledged and recorded, nor that appellee Graeser is not the equitable owner.

The sole contention is that the mortgage was not foreclosed at maturity or within a reasonable time thereafter, and therefore it should be held void as against the claim of E. Sondheimer & Co., the appellants.

We are of opinion that appellants can not be regarded as *bona fide* purchasers, and that the decision in Reed v. Eames, 19 Ill. 596, cited by counsel, is not applicable to the facts in this case. The Gassman Parlor Frame Co. certainly could not complain of any *laches* or delay on the part of the mortgagee in foreclosing the mortgage, because the former owners of the mortgaged property, including Catherine Gassman, the mortgagor, did not become purchasers by merely organizing themselves as a corporation, and going through the form of transferring the property to the corporation. The corporation when formed was virtually controlled by appellants. The board of directors consisted of three, two of whom, as before stated, were Max and Henry Sondheimer, sons of Emanuel Sondheimer, Max being also a member of the firm of E. Sondheimer & Co. Appellants owned half the stock, and furnished, as Max and Henry Sondheimer testify, all the means to carry on the business. In view of these facts it may well be said that appellants were, for all practical purposes, the Gassman Parlor Frame Co., and so stood in no different relation to the mortgagee than did that company.

But there is an additional reason why appellant's counsel can not be heard to complain of delay in the foreclosure

of the mortgage. . The mortgage contains the usual provision that on default being made in the payment of principal or interest, the whole amount may, at the option of the mortgagee, become at once due and payable. One of the notes secured by the mortgage being past due in August, 1894, John B. Rees and James Rees, the mortgagees, took possession of the mortgaged property, for the purpose of foreclosing the mortgage, when the Gassman Parlor Frame Co. replevied the goods, Emanuel Sondheimer, one of the appellants, executing the replevin bond as surety. Having thus actively assisted in preventing the foreclosure of the mortgage, he is estopped to say that appellee Graeser has been guilty of *laches* in failing to foreclose. And if he is estopped, so also are his co-appellants, who joined with him in the assignment of errors, the rule being that " an assignment of errors, like a pleading, must set forth errors which are available to all who join in it. If not good as to all, it is not good as to any." 2 Ency. of Pl. & Pr. 993, and cases cited.

At the time the replevin suit was commenced, the appellants were represented by a majority of the board of directors of the Gassman Company, and were then in control of and carrying on the business of the company, and we think it clear from the evidence that Emanuel Sondheimer, in executing the replevin bond, while acting nominally for the Parlor Frame Co. was in fact acting in the interest of and for E. Sondheimer & Co., and that the replevin suit was in fact commenced by E. Sondheimer & Co., in the name of the corporation.

The appellees assign as error the finding of the Circuit Court that the assignment by the Gassman Parlor Frame Co. to appellant, of its book accounts, etc., was valid as against other creditors. It does not appear from the evidence that there are any creditors other than the laborers, appellants and appellee Graeser, whose claims have not been paid, or that there is any person before the court interested as a creditor in the fund in the hands of the receiver, except appellants and appellee Joseph Graeser.

The decree is affirmed.